UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED REEVES,

    Plaintiff,

v.                                              Case No. 1:04-cv-533
                                                   HON. R. ALLAN EDGAR

FREDERICK BANDT,

    Defendant.

_____/

## **AMENDED REPORT AND RECOMMENDATION**[1]

        Plaintiff Fred Reeves, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Corrections Officer Frederick Bandt, who is employed by the Michigan Department of Corrections (MDOC) at the Ionia Maximum Correctional Facility (ICF).

        Plaintiff's complaint alleges that on May 25, 2001, he went into cardiac arrest and required emergency medical attention. Plaintiff states that other prisoners assisted him by kicking on the cell doors in order to alert unit staff. Defendant responded by asking Plaintiff what was wrong. Several prisoners told Defendant that Plaintiff was having a heart attack, and Defendant responded, "In that case, kick harder." Defendant then walked away. Approximately 25 minutes later, Officer Huizing was making a round and found Plaintiff unconscious on the floor of Plaintiff's cell. Plaintiff became conscious while being transported to the Ionia County Memorial Hospital by

---

[1] The undersigned issued a Report and Recommendation in this matter on August 3, 2005 (docket #36). Upon consideration of the objections filed by plaintiff, by separate order the undersigned has vacated that Report and Recommendation, and issues this Amended Report and Recommendation.

ambulance. Plaintiff was admitted to the hospital and was kept overnight. When Plaintiff had the chance to ask Defendant why he did not assist him, Defendant responded "I was counting on one less nigger in the world." Plaintiff claims that Defendant violated his constitutional rights and is seeking compensatory and punitive damages.

Presently before the Court is the Defendant's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas*

*& Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Initially, Defendant contends that Plaintiff's claims are barred by the applicable statute of limitations. Federal courts apply state personal injury statutes of limitations to claims brought under §1983. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S. Ct. 1938, 1947 (1985); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 180-181 (6th Cir. 1990). For civil rights suits filed in Michigan under §1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(8); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.) (per curiam), *cert. denied*, 479 U.S. 923, 107 S. Ct. 330 (1986); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, *1 (6th Cir. Feb. 2, 1999). Although state tolling provisions must be applied to § 1983 suits brought by prisoners, *Hardin v. Straub*, 490 U.S. 536, 544 (1989); *Jones v. City of Hamtrack*, 905 F.2d 908, 909 (6th Cir. 1990), *cert. denied*, 498 U.S. 903 (1990), Michigan's tolling provision for imprisoned persons does not provide plaintiff any additional benefit in this case. *See* MICH. COMP. LAWS § 600.5851(9).

Defendant states that Plaintiff's claim accrued on May 25, 2001, when Defendant allegedly ignored Plaintiff's pleas for medical assistance. However, Defendant is incorrect in this assertion. The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999). This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Plaintiff's civil rights action was tolled for the period during which his

available state remedies were being exhausted. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) (*citing Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir. 1999) (per curiam); *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice. *Kalasho v. City of Eastpointe*, 66 Fed. Appx. 610, 611 (2003) (*citing Yeo v. State Farm Fire & Cas. Ins. Co.*, 242 Mich. App. 483, 618 N.W.2d 916 (2000)). Tolling under Michigan law extends to periods in which a dismissal without prejudice is pending on appeal. *Kalasho*, 66 Fed. Appx. at 611 (*citing Yeo*, 618 N.W.2d at 916-17; *Darrin v. Haven*, 175 Mich. App. 144, 437 N.W.2d 349, 352 (1989)).

A review of the attachments to Defendant's motion for summary judgment reveals that Plaintiff filed a step I grievance regarding the alleged denial of medical care on May 29, 2001. Plaintiff appealed the denial of his grievance to step III. Plaintiff's step III response is dated August 29, 2001. Therefore, the earliest date that Plaintiff's claim accrued is August 29, 2001. However, as noted by Defendant, Plaintiff failed to name him in the step I grievance as required in order to exhaust administrative remedies pursuant to § 1997e. In his response to the motion for summary judgment, Plaintiff concedes that he did not name Defendant in the step I grievance dated May 29, 2001, because he was not aware of that requirement. Plaintiff states that on September 12, 2002, he filed a civil rights action regarding alleged delay in providing medical care in the Eastern District of Michigan. This action named Defendant and other MDOC employees. On December 30, 2002, the action was transferred to the Western District of Michigan and assigned to the Honorable Robert Holmes Bell. *See Reeves v. Overton, et al.,* No. 1:02-cv-949 (W.D. Mich., Mar. 14, 2003). Plaintiff's complaint was dismissed on March 14, 2003, for failure to exhaust administrative remedies. While the action was pending, Plaintiff was informed by his legal agreement partner of

the requirement that he name each individual defendant in the step I grievance. Plaintiff then sent a request for a step I grievance form to the grievance coordinator. Plaintiff was on modified access at the time and his request was denied.

On March 5, 2003, Plaintiff gave proof that he had filed grievances to Assistant Resident Unit Supervisor Payne to be mailed to United States Magistrate Judge Joseph Scoville. However, prison officials confiscated the proof of exhaustion and it was never sent to the court. On April 8, 2003, Plaintiff refiled his § 1983 complaint in the Western District of Michigan. *See Reeves v. Smith, et al.*, 4:03-cv-50 (W.D. Mich., Mar. 31, 2004). Plaintiff named Defendant Bandt and other correctional employees as defendants in that case. At the conclusion of the case, Plaintiff's claims against Defendant Bandt were dismissed without prejudice for failure to exhaust administrative remedies.

Plaintiff states that during the pendency of his lawsuit, he had been trying to file a grievance raising the claims at issue in this complaint, but the grievance coordinator failed to respond to Plaintiff and his mail was repeatedly thrown away. Plaintiff then sent 17 grievances to the office of Sandra Girard, who was the Executive Director of Prison Legal Services of Michigan, and asked her to mail them to Lansing. On May 10, 2004, Plaintiff received a letter from Girard's office informing him that his grievances had been mailed. While awaiting a response on the direct step III grievance, Plaintiff requested a step I form, but his request was denied by the grievance coordinator. Plaintiff's subsequent request for appeal forms was also denied by the grievance coordinator on May 11, 2004. Plaintiff's step III direct grievance was denied by the Director in July, 2004. Plaintiff received a memorandum from Grievance Coordinator N. Klinesmith, dated March 18, 2004, stating that grievances properly filed directly to step III were sufficient to exhaust his administrative remedies.

As noted above, the earliest date that Plaintiff's claim accrued was August 29, 2001. Therefore, the statute of limitations would not have run on Plaintiff's claim until August 29, 2004. Plaintiff filed his complaint on August 12, 2004, which is within three years of August 29, 2001. Moreover, during much of the time period following August 29, 2001, Plaintiff had pending lawsuits which were later dismissed without prejudice for failure to exhaust administrative remedies. Therefore, Plaintiff would have been entitled to tolling of the statute of limitations during this time period. Accordingly, I recommend that the Court find that defendant's argument that the statute of limitations bars Plaintiff's claim is without merit.

Defendant further claims that Plaintiff has failed to exhaust his administrative remedies because he failed to name Defendant in the grievance filed in 2001. Instead, Plaintiff filed an untimely grievance naming Defendant, which Defendant asserts is insufficient to satisfy the exhaustion requirement because it was untimely and duplicative. Defendant is incorrect. As noted previously, the statute of limitations for filing a § 1983 action in this court is three years. The fact that the MDOC has time limits for filing grievances which are significantly shorter than three years is of no concern to the court. So long as Plaintiff has taken whatever measures are available for him to file a grievance naming the Defendant at some point during the three year period prior to filing an action in this court, he has complied with the exhaustion requirement. The fact that it is untimely or duplicative in violation of state procedure is irrelevant.

Defendant further claims that he is entitled to summary judgment in this matter because the facts do not support Plaintiff's claim that Defendant violated his Eighth Amendment rights by being deliberately indifferent to Plaintiff's serious medical needs. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care

to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

As noted above, Plaintiff claims that Defendant refused to help him when he was told by other prisoners that Plaintiff was unconscious in his cell. Plaintiff states that he was unconscious for approximately 25 minutes when Officer Huizing discovered him unconscious on the floor of his cell. Plaintiff states that he became conscious while being transported to the Ionia County Memorial Hospital by ambulance.

In his motion for summary judgment, Defendant states that the progress note, dated May 25, 2001, shows that Plaintiff was not suffering from a serious medical need. According to Defendant, when the nurse came to see Plaintiff in his cell, he was awake and oriented, his blood pressure and pulse were normal, and he did not feel like his heart was causing his problems. The undersigned notes that Defendant misstates the actual contents of the progress notes. The progress notes at issue actually state that the nurse received a call from the unit, that Plaintiff was found on the floor, shaking, and complaining of chest pain. Plaintiff was placed on the bed. Plaintiff told the nurse that he had been feeling nauseated and experienced pain in the center of his chest. Plaintiff told the nurse that he had lost consciousness while attempting to get to the toilet. Plaintiff described feeling numb all over, clammy, short of breath, dizzy, and stated that he had a headache at the time of the incident. Plaintiff continued to complain of numbness in his left hand and forearm, and pain in the back of his neck, chest and sternal area. Plaintiff had taken three "nitro," which had improved his comfort level somewhat. Plaintiff's hands were still clammy. Plaintiff's speech was clear, he was alert and oriented to person, place and time, and his vital signs were as follows: blood pressure

130/100, pulse 100 and "tachy," and respirations 26. Plaintiff's lungs were clear to auscultation. Plaintiff told the nurse that he did not feel like it was his heart. The progress notes stated that Plaintiff had a history of asthma and hypertension, and was on numerous medications. Plaintiff was subsequently taken by ambulance to the hospital where he was evaluated. The progress notes further state that Plaintiff was returned to the prison the next day, with no indication of Plaintiff's condition upon his return. (*See* Progress Notes dated May 25, 2001, and May 26, 2001, Defendant's Exhibit 2, pp. 2-3.)

In the brief in support of the motion for summary judgment, Defendant states that he was not working in Plaintiff's unit at the time of the incident. In support of this assertion, Defendant offers his affidavit, as well as the unit log book and the history of cell usage form showing that he was assigned to Lower B-Wing, while Plaintiff's cell was in Upper A-Wing. In his affidavit, Defendant attests that he had no contact with Plaintiff on the date in question and has no knowledge of the incident described in Plaintiff's complaint. (*See* Defendant's Exhibit 3.)

In his response to Defendant's motion for summary judgment, Plaintiff offers the summary sheet from his discharge from Ionia County Memorial Hospital indicating that his diagnoses were angina and asthma. Plaintiff further claims that he filed the affidavit of prisoner Branch which supports the fact that Defendant ignored Plaintiff's request for help. However, a review of the record in this case does not reveal this document, nor did a review of the records in *Reeves v. Overton, et al.,* No. 1:02-cv-949, and *Reeves v. Smith, et al.*, No. 4:03-cv-50, reveal any affidavit by prisoner Branch.

Following a careful review of the record in this case, it appears that there is adequate evidence to support Plaintiff's assertion that he suffered from a serious medical condition. As noted above, the unit log book, the history of cell usage form, and Defendant's affidavit all support a

finding that Defendant was assigned to Lower B-Wing on the date in question, while Plaintiff's cell was in Upper A-Wing. Defendant denies any knowledge of the subject matter of the instant complaint. Plaintiff explains that both Lower B-Wing and Upper A-Wing are in the same unit. Defendant was in that unit during the incident. Plaintiff further states that the officer's day room is located on the A-Wing and that Defendant came out of the day room when plaintiff and other prisoners kicked the door. Defendant , it appears, was initially informed that plaintiff was in distress. Defendant simply ignored the request for help. Further, plaintiff asserts that if the court would allow discovery of the Critical Incident Reports, those reports would disclose that defendant Bandt was involved in this incident. Accordingly, based upon plaintiff's assertions it is premature to dismiss this action for lack of a genuine issue of fact.

Finally, Defendant claims that he is entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable

in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).  Therefore, the undersigned concludes that because there exists a genuine issue of material fact whether Defendant was present and involved in refusing to provide plaintiff medical care, Defendant is not entitled to qualified immunity.

Accordingly, it is recommended that Defendant's Motion for Dismissal and/or Summary Judgment (Docket #18) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   September 8, 2005